```
 1                 IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
 2                        NORTHERN DIVISION

 3    UNITED STATES OF AMERICA, :  CRIMINAL NO.:

 4            Plaintiff,       :  JFM-06-0309

 5         vs.                 :

 6    JAMES DINKINS, et al.,   :  Baltimore, Maryland

 7            Defendant.       :  May 11th, 2009

 8         *    *    *    *    *    *    *    *    *    *    *

 9         The above-entitled case came on for motions before the

10    Honorable J. Frederick Motz, United States District Judge.

11         *    *    *    *    *    *    *    *    *    *    *

12                     A P P E A R A N C E S

13    For the Government:

14         Kwame Manley, AUSA
           Debra Dwyer, AUSA
15
      For Defendant Melvin Gilbert:
16
           Archangelo Tuminelli, Esquire
17         Jonathan Van Hoven, Esquire

18    For Defendant James Dinkins:

19         Gary Proctor, Esquire
           Joseph Murtha, Esquire
20
      For Defendant Darron Goods:
21
           Thomas J. Saunders, Esquire
22         C. Justin Brown, Esquire

23

24    Christine T. Asif, RPR, CRR

25    Official Court Reporter
```

```
1                    P R O C E E D I N G S

2            THE COURT:  Good morning.  We're here formally on

3    a motion to reconsider the Batson motion that was filed by

4    on behalf of Mr. Dinkins.  And in light, because it -- the

5    motion relied upon facts which we didn't discuss when we

6    last discussed the Batson motion, I thought we'd have a new

7    hearing.

8            Let me also bring you up to date.  I don't know if

9    you all -- I can't remember who knows what.  As I predicted

10   we've already lost one alternate who all the sudden

11   remembered she's going to have a gallbladder operation

12   sometime.  One would have thought that -- and I always know

13   it's going to happen.  Ironically it's alternate No. 1.  So

14   what I'd like to re-ask you.  I don't know whether people

15   will be available, whether we should now call in another one

16   or two to sit for a couple weeks.  And we were talking about

17   that last week.  Then Mr. Proctor wanted three strikes to

18   get rid of alternate No. 1.  Well, that's now academic

19   because alternate No. 1 is now gone.  We ought to discuss

20   that.

21           And the other thing is, I don't remember if it was

22   in the questionnaire, it may be too late, and I don't know

23   if there -- I don't read the newspaper much anymore, there

24   may be a newspaper article between now and Wednesday.  Maybe

25   to call the jurors who are going to be picked just to remind
```

1   them or ask them not to read if they see something in the

2   newspaper about the case.  But that's the three things I

3   have.

4          Let's start with -- I guess Mr. Proctor's set

5   forth the reasons he thinks there's was a Batson violation.

6   And, Mr. Manley, if you can respond.

7          MR. TUMINELLI:  Judge, can I just ask you to

8   clarify, if you bring in two additional alternates, will

9   they go to the end of the alternates?

10          THE COURT:  Sure.

11          MR. TUMINELLI:  Okay.

12          MR. MANLEY:  Thank you, Judge, we received the

13   motion to reconsider Batson as to Mr. Dinkins.  And I just

14   want to respond to that and I have a number of points.

15   First of all, we obviously take this very seriously.  A

16   Batson challenge is an allegation that we have engaged in

17   purposeful discrimination.  And we believe it is wholly

18   without merit.  And I want to outline a number of reasons

19   that we offered previously, and also some other facts about

20   this.

21          Juror 6 is African American.  But the important

22   fact is that she's 29 years old, she's unemployed, her

23   mother and father, not a distant relative, not someone, a

24   neighbor, her mother and father have been involved in drugs

25   her entire life.  She actually said her entire childhood.

1    Now, I'll get to the significance of being a mother and

2    father.  Her husband had an assault charge, that assault

3    charge was dropped.  When she was a teen she lost two

4    friends, both murdered in 1999 and in 2000.  And I would

5    note, Your Honor, that in -- my calculation in 2000 she was

6    20.  In 1999 she was 19.  Obviously, we don't know her birth

7    date, so it may be off a little bit.  But that's very

8    significant.  When she was 19 and 20 she lost two friends

9    consecutively, murdered, shot dead.

10        And also, Your Honor, this was the juror that we

11   believed had a significant hardship, she has three children

12   -- actually, I'm sorry, Your Honor, she has four children,

13   age 10, 9, 6, and 5.  And she expressed some concern about

14   having child care picking up children from school.  We had a

15   long discussion about that.  And Your Honor concluded that

16   you were not going to strike her for hardship as the

17   Government had requested.  But you did note that you can use

18   a peremptory challenge if you want to.

19        THE COURT:  I think I did.

20        MR. MANLEY:  So that's where we're started from.

21   Now let me just say I've talked, Ms. Dwyer and I have talked

22   to over a dozen prosecutors in our office, and they all

23   looked as if, well, what's the issue?  Why would you not

24   strike her?  If she's 29 and unemployed, and have the mother

25   and father involved in drugs her entire life, Ms. Dwyer and

1    I would not have her on a normal drug case at all.  And let

2    me explain the reason --

3            THE COURT:  Let me just refresh my recollection,

4    you say involved in drugs, was it drug addiction or --

5            MR. MANLEY:  We have no idea whether it is drug

6    addiction or drug using.

7            THE COURT:  Did she use the word "involved"?

8            MR. MANLEY:  She said, the exact words, my mother

9    and father used drugs my whole childhood.  Now, whether

10   that's using drugs, just using drugs, or there's using drugs

11   selling drugs to buy drugs.  We know that in almost all

12   cases people who are addicted engage in criminal activity so

13   they can get the money to use drugs.  We don't know anymore

14   information.  But the bottom of line is we've talked to a

15   number of people in our office, and we would stop right

16   there.

17           The defense, and particularly Mr. Proctor in his

18   response said that, well, when you look at the race neutral

19   reasons, the fact that her husband was charged with an

20   assault, the juror 6 said that they did a good job, meaning

21   that the criminal justice system did a good job because her

22   husband was charged with assault but the charges were

23   dropped.  We look at that very differently than the defense.

24   We look at that as, one, her husband was charged as an

25   assault, was it domestic?  I don't know.  Was he involved in

1     hitting someone, shooting someone?  We have no idea.

2     There's a big wild card here.

3            Two, it reminds us of a lot of the city cases

4     where assault cases are just dropped, stetted, nol prossed.

5     Three, it could have been a domestic case.  If it was a

6     domestic case, of course you think they did a good job if

7     she was the victim and her husband was assaulted.  We don't

8     know any of that.  That's a big wild card.  And the

9     Government, frankly, does not want wild cards.

10            Also, the fact that she said they did a good job,

11     what does that mean?  The case was dropped.  So he was

12     falsely charged, he shouldn't have been charged.  It means

13     there was a prosecutor that filed an indictment that should

14     not have.  There was a commissioner who accepted a statement

15     of probable cause that should not have.  There's a police

16     officer who in some way got this through to a charge that

17     maybe shouldn't have.  We don't see that as a positive

18     thing.  But the defense says that that suggests that there's

19     no animus toward the Government.  We believe that there's

20     great likelihood that that is a problem for the Government.

21            Now, the next thing that the defense does is they

22     say, well, let's look at the other people, there are other

23     people who had family members who had some problems.  Well,

24     let's look at those people.  The first person they say is

25     No. 190.  By my count No. 190 is a white female.  They

1    indicated it's a white male, but in any event, her brother

2    was arrested for domestic violence.  We think that's very

3    different from having mother and father involved in drugs,

4    two friends murdered, and a husband with assault charges.

5         But the most important factor about this white

6    female is that she's married to a deputy sheriff, a deputy

7    sheriff of the Baltimore City Police Department.  She as a

8    MBA.  She has other family members who are in government.

9    We think she's going to be much more favorable to the

10   Government, particularly given the fact that she's married

11   to a deputy sheriff.

12        The other person they mention is 434, a white

13   female who says her ex-husband was convicted of selling a

14   handgun.  Well, No. 434 is also from Wicomico County and she

15   said gangs are trouble.  She said it in her statement, gangs

16   are trouble.  She said she can be impartial, but she said

17   gangs are trouble.  We think that she's going to be much

18   more favorable to the Government.

19        Also, they noted 323, who is a black male.  And

20   it's interesting that they note this, because basically

21   they're saying, compare the Government's response to 323 is

22   a black male, they should have struck 323 if they were

23   trying to be consistent.  But 323 is a black male, so if we

24   would have struck 323 they would have been mad at us for

25   striking 323.  323 said that he had a brother who had a CDS

1    offense.  I would note, Your Honor, 323's the person who

2    came in, black male, very nice suit, clean cut, his favorite

3    newspaper's the Wall Street Journal.  He's going to be very

4    favorable to the Government.

5         And I know that sometimes we assume that the more

6    black people you have on the jury, the more beneficial it is

7    to the defendants, but I can assure you that there are a lot

8    of black people, as an African American, I can say this, who

9    are not going to identify with these defendants.  And I

10   think one of them is someone who reads the Wall Street

11   Journal and money magazine, who's trying to advance himself

12   within the world of business.  He's not going to look at

13   these three individuals favorably at all.

14        The point here, Your Honor, is that we had race

15   neutral reasons for striking juror No. 6.

16        THE COURT:  I ask this because you mentioned the

17   age under 29, do you know how old the other people -- is

18   that --

19        MR. MANLEY:  Yes, that's very significant.

20   Because she would be -- No. 6 would be the youngest person

21   on the jury.  The youngest person right now, Your Honor --

22   well, let me give you the ages 37, 67, 43, 52, 49, 61, 40,

23   49, 34, 49, 70.  These are not 29-year-olds.  And we struck,

24   for Your Honor's understanding, we struck a number of young

25   people.  We struck a number of young people who were the

1    same age or younger.

2              THE COURT:  That's fine.  That's fine.  Mr.

3    Proctor.

4              MR. PROCTOR:  Thank you, Judge.  I just want to go

5    into a little bit of background.  As the Court will recall

6    we twice tried to pick a jury the first time around the

7    government struck 7 out of 8 people of color.  One out of

8    one Asian male, and one out of one Hispanic females for a

9    total of 9 out of 10.  Second time around the Government

10   reversed one of the black females.  So we have six out of

11   eight African Americans, one out of one Asian females, and

12   one out of one Hispanic females.  I'm sorry, Asian males, if

13   I said that I apologize.

14             The Government talks about the age being 29.  I

15   have several troubles with that.  First of all, Judge, are

16   we saying we can never have young people on the jury if the

17   defendants happen to be young?  I'm not sure if that isn't

18   another class worthy of protection from the Court.  Second

19   of all, Mr. Dinkins is 36, Mr. Gilbert is 34.  So 29 years

20   old means she is five years younger than Mr. Gilbert, seven

21   years younger than Mr. Dinkins.  By contrast juror No. 5 is

22   37, so one year apart from Mr. Dinkins, three years apart

23   from Mr. Gilbert.  Much closer in age.  Juror No. 176 is 43,

24   the same in age disparity on the other side as Mr. Dinkins.

25             THE COURT:  What are you talking about, they don't

```
 1    want young people because they don't think they have mature

 2    judgment.  I don't understand what you're talking about.

 3              MR. PROCTOR:  I heard them say they don't want

 4    young people because they don't want people to identify with

 5    these defendants, being the same age and similar background.

 6              MR. MANLEY:  We don't want young people because we

 7    don't believe they have the full life experiences to hold

 8    someone's fate in their hands.  And we do not think young

 9    people --

10              THE COURT:  I had understood you were saying that,

11    but maybe I was wrong.

12              MR. PROCTOR:  And, Judge, it's significant that it

13    took the Government a day to come up with this.  You know,

14    Miller-El talks about the Government must stand or fall on

15    their race neutral reasons.  None of this was mentioned on

16    Thursday.  The first time it occurs to them is Friday

17    morning, a day later was the first time I ever heard of it.

18    Because when I pointed out the inconsistencies of their

19    treatment of juror No. 6, vis-a-vis the other people on the

20    jury, they scratched around and that's what they came up

21    with.  And if we give them another week, they'll think of

22    something else.  Again --

23              THE COURT:  Why don't you cut it out, you didn't

24    raise the issues.  You're going to tell me you didn't have

25    the time, you could have been taking notes.  Don't attack
```

1    people like that, another week if they have time to think

2    about it.  I don't want any personal attacks, if you've got

3    a reason you state the reason.

4              MR. PROCTOR:  The reasons --

5              THE COURT:  I'm getting fed up with -- if there's

6    any personal attacks during this case, whoever does it is

7    going to be in trouble with me, whether it's from the

8    Government or the defense.  This is an important case, it's

9    a serious case.  And stay away from personal attacks.

10             MR. PROCTOR:  I apologize, it wasn't meant as a

11   personal attack.

12             THE COURT:  Please -- the apology's accepted.

13             MR. PROCTOR:  It wasn't meant that way, Judge, my

14   point is Monday morning quarterbacking should be treated --

15             THE COURT:  It's not Monday morning

16   quarterbacking.  You filed a written motion and they

17   responded to it after having had a chance to see what you

18   had to say.  It's not Monday morning quarterbacking at all.

19             MR. PROCTOR:  Okay.  I'll move on.  Judge, the

20   hardship, I wrote in my notes, as that juror was being

21   examined that it was --

22             THE COURT:  I thought there was a potential

23   hardship.  I said he could exercise his peremptory, because

24   she did have the mother take care of them, but she was going

25   to have to leave at 4:30 or 5:00, there was going to be a

1    restraint upon the time.  Fortunately, we'll be finished --

2    hopefully we'll be finished by 4:30 or 5:00.  And we might

3    have a juror who's thinking about her children not about the

4    evidence.  They didn't say it the other day, but I said it.

5          MR. PROCTOR:  Again, Mr. Manley asked her more

6    than once, would that present a hardship?  She said it can

7    be worked out.  I wrote down, it can be worked out.  Judge,

8    juror No. 254 has two children who are in private school.

9    Juror No. 275 has three children, 14, 13 and 10.  Juror No.

10    363 has one child age 6.  Juror No. 376 has three children,

11    one of which is 13.  Juror No. 384 has two children, age 9

12    and 5.  Juror No. 323 has four kids, two are adults, one is

13    17, one is 15.  Again, Judge, this does not differentiate

14    her from all the people that are serving on our jury.

15          THE COURT:  I can't recall all that, it did during

16    the jury selection process.  Because we focused upon people,

17    I remember there was a grandfather who I excused for cause

18    because I think his daughter's going to have a baby, and the

19    daughter has another child with special needs.  I mean, I

20    thought -- I can't tell you that I totally recall each and

21    every family circumstance.  But if the ones that you have

22    mentioned caused a problem, it would have been flushed out

23    during the jury selection process.

24          MR. PROCTOR:  And I think it's significant that

25    none of the other jurors were asked about their child care

1    situations.

2              THE COURT:  I'm not sure they were.

3              MR. PROCTOR:  They weren't.

4              THE COURT:  Well, maybe they said there wasn't a

5    problem.  If they didn't say it was a problem, there was

6    nothing to ask about.

7              MR. PROCTOR:  I didn't hear this juror say it was

8    a problem either, she said I would have to --

9              THE COURT:  She first said it was a problem, as I

10   recall, but be that as I may.

11             MR. PROCTOR:  She said, I would have to make

12   arrangements, and her answer was, it's doable, it's

13   workable.  The assault charge the Government mentions, we

14   don't know whether this happened, we don't know whether that

15   happened.  Again, they could have asked.  If it was a

16   significant --

17             THE COURT:  Now, wait a second, her husband had an

18   assault charge and it was dropped, and she thought that he

19   was treated right, I mean --

20             MR. PROCTOR:  Right.

21             THE COURT:  Why isn't that ipso facto of

22   everything else aside.

23             MR. PROCTOR:  And her husband was honorably

24   discharged from the military, Judge, this is not someone

25   who's out running the neighborhood.

1          THE COURT:  Well, apparently you don't run

2    homeland security.  A lot of honorable people are

3    terrorists, according to them.  People been honorably

4    discharged, not anymore, I forgot that's gotten changed.

5          MR. PROCTOR:  And lastly, Judge, when the

6    Government was talking about differentiating, one of the

7    jurors answered gangs are trouble.  I don't see any jurors

8    saying gangs aren't trouble.  Again, it's a pretextual

9    reason.

10          THE COURT:  All right.  This is, upon reflection,

11   a frivolous motion.  We shouldn't have reassembled to

12   discuss it.  The motion's denied.

13          MR. PROCTOR:  I'm not quarrelling with your

14   ruling, Judge, I would ask that the jury questionnaires be a

15   part of the record of the remaining jurors, and juror No. 6,

16   so that an appellate court later will be able --

17          THE COURT:  Sure.  They should be part of the

18   record.  They absolutely should be.  And they will be

19   sealed.

20          MR. PROCTOR:  Does Your Honor still have a clean

21   copy or would you like me to provide one?

22          THE COURT:  I don't have a clean copy.

23          MR. MANLEY:  We can make sure that the clerk has

24   a --

25          THE COURT:  I'm sure the jury commissioner does.

```
 1            MR. MANLEY:  Yes, jury commissioner should.
 2            THE COURT:  All right.  Now, let's talk about the
 3   practical issue, we've already lost a juror.  I had raised
 4   the possibility the other day of picking two more
 5   alternates.  And as usual things weren't as simple.  And I
 6   understood I wasn't -- I understood Mr. Proctor's position
 7   on this, but it's now mooted, because I think the juror who
 8   was -- has the problem, the alternate, I think is alternate
 9   No. 1, so 323 or whoever the African American male is now 1.
10   How many alternates do we have left?
11            MR. MANLEY:  Right now, Your Honor, if we take out
12   434, my count is we have one, two, three, four, five, six
13   potential alternates.  And in this order, 323 --
14            THE COURT:  How many -- and we've already
15   selected --
16            MR. MANLEY:  We've already selected three of
17   those, we've already told 323, 109 and 47, the people that
18   we would have to tell now are 124, 406 and 422.
19            THE COURT:  Now, can I give everybody an
20   additional strike and --
21            MR. PROCTOR:  As long as we get a strike, we have
22   no problems with those other people being added to the end.
23            THE COURT:  You want to strike somebody who's
24   already on?
25            MR. PROCTOR:  Yes, sir.
```

1          MR. MANLEY:  These are alternates.

2          MR. PROCTOR:  Yeah, we want to strike an

3   alternate, not someone who is one of the 12.

4          THE COURT:  Suppose I pick five alternates, what's

5   the rule say, how many strikes --

6          MR. TUMINELLI:  Rule still requires you to do it,

7   Judge.

8          THE COURT:  Two?

9          MR. TUMINELLI:  For two jurors one strike, for

10  three or four jurors, two strikes, five or six, three

11  strikes.

12         MR. PROCTOR:  So if you add five, assuming the

13  Government doesn't strike any, we would still be left with

14  four.

15         THE COURT:  But you don't want to use your strike

16  against one of them, you want to use it against somebody

17  else.

18         MR. PROCTOR:  One of the alternates, yes, sir,

19  which we would have done had we known there were going to be

20  five from the start.

21         THE COURT:  That's exactly the same problem we had

22  the other day, this changing of the rules of the game

23  afterwards.  We'll go with three alternates and hope we

24  don't lose anybody.

25         MR. MANLEY:  That's fine, Your Honor.  Thank you.

1      Let me just bring up one other issue, Your Honor --

2              THE COURT:  Does anybody mind if I have the jury

3      commissioner remind people -- either remind or tell them if

4      they see anything about this in the newspaper not to read

5      about it.  Sometimes people write about the trials on the

6      day of the trial.  I don't -- was there anything in the

7      Sunday papers?  I didn't see anything.

8              MR. MANLEY:  No.

9              MR. PROCTOR:  No, sir.

10             THE COURT:  Okay.  Yes?

11             MR. MANLEY:  Judge, there's only one other thing

12     that I -- actually, I don't even think we need to address

13     that now.  We're fine.  Thank you, Judge.

14             THE COURT:  Okay.  A motion was just filed by Mr.

15     Goods about the statement.

16             MR. MANLEY:  That's what I was going to say, but

17     we've had a discussion with them.  They filed a motion

18     asking for rule of completeness, they want to include more

19     parts of the call.  We're fine with playing the whole call.

20     So we think we can work out whatever other complete parts of

21     the call they should to include.  And also, Your Honor, just

22     want to note, these are calls recorded from the institution,

23     it clearly says that the calls will be monitored and

24     recorded.  And we're open to including other parts of the

25     call, that's fine with us.

1          MR. BROWN:  Well, we're not challenging the calls

2    on a 4th Amendment grounds, obviously.  What we're saying is

3    that if the Government takes the parts of the calls that it

4    thinks are admissible, whether they're a confession and

5    whether they're relative to the case, that we be allowed to

6    supplement those parts of the calls with other parts of the

7    calls that puts that into perspective.

8          THE COURT:  What's more complete than all of the

9    call?

10         MR. BROWN:  I would argue, Your Honor, that there

11   are parts of the calls that are not relevant to this case.

12   It might be extremely prejudicial.  For example --

13         THE COURT:  Okay.  Well, we'll focus upon that.

14         MR. MANLEY:  We'll get that worked out, Your

15   Honor.  We want the whole call in.  I know why they don't

16   want the whole call in.  But we'll work on it.

17         THE COURT:  Well, what's the issue?

18         MR. MANLEY:  Well, I mean the issue --

19         THE COURT:  What does he think -- what do you --

20         MR. BROWN:  Your Honor, here's our concern,

21   without getting --

22         THE COURT:  I'm just asking so I can think about

23   it.

24         MR. BROWN:  Okay.  The Government is alleging that

25   Mr. Goods was fixing an alibi in some of these calls.  And

1    we think it's critical that the context of that was that he

2    did have an alibi and he felt, and it's repeated throughout

3    the calls -- well, he thought that his potential -- the

4    location where he was, and the person who could say that he

5    was there, he didn't think that that was a reliable alibi.

6    And he was allegedly trying to create a better alibi.

7    Which, Your Honor, is very different, it's very different

8    from someone who's saying, I did it and I got to come up

9    with an alibi.

10             THE COURT:  No, I understand.

11             MR. BROWN:  He was concerned that no one would

12   believe his baby mother, because you know it's perhaps

13   common knowledge that someone's -- the mother of someone's

14   child will do anything for them.  And he was concerned that

15   maybe that wasn't good enough.  That's very different from

16   someone who was saying I did it, I got to come up with

17   something, cover my back.

18             THE COURT:  So what's the 403 issue that you're

19   worried about?  Let me hear from the Government what they

20   think you think the 403 issue is.

21             MR. MANLEY:  Well, we think that -- well, there

22   are two sets of calls.  The call that Mr. Goods' -- counsel

23   for Mr. Goods is referring to is a call where he says that

24   he wants his baby mother to come in and say he was at this

25   place at the time of the murder, but he's worried.  He's

1    worried because she's not going to be believable.  And he

2    can't use her.  And he's thinking, well, who else can I get?

3    Well, I can have this person come in, but she's not going to

4    be able to say this.  What about this person?  There's a

5    whole stream of consciousness in the entire call, which we

6    hope we can play the entire call, where he is worried that

7    he can't come up with a witness because everybody is going

8    to think his baby mother is lying for him.

9         And if Your Honor remembers from a suppressed part

10   of the case earlier, there are other calls which obviously

11   won't come in, where he was trying to get people to lie for

12   him.  Now, that stuff was excluded.  But this call is

13   clearly in.  So we want to play the entire call.  We want to

14   make sure it's as complete as possible.

15        THE COURT:  What do you think the 403 is?

16        MR. MANLEY:  There is no 403.

17        MR. BROWN:  The 403.  If I may have a moment, Your

18   Honor, the 403 issue is focused on another phone call, which

19   first of all, it's extremely difficult for us to even

20   understand what is on that phone call.  So we have some very

21   real concerns about trying to -- to deal with that issue

22   when we don't know what that phone call says.  The

23   Government is purporting that the phone call says that there

24   is a -- what I call in the motion, a mystery photo, or

25   something like that, that's being discussed.  And upon

1    hearing of this photo that was at the crime scene, Mr. Goods

2    expresses some frustration and has some strong words.  I

3    want to know how that is probative of his guilt.  Without

4    being -- without being extremely prejudicial, unfairly

5    prejudicial, because it raises this issue that there's some

6    kind of photograph out there.

7            Now, if the Government believes that there is a

8    photograph, and they can offer other evidence to that

9    effect, I have no problem with that.  But to bring that

10   specter into this trial, I think that's --

11           THE COURT:  Well, if he thinks there's a

12   photograph and it causes a problem for him, that's the

13   relevance.  There would be an instruction that there is no

14   photograph.

15           MR. MANLEY:  And, Judge, let me give you --

16           THE COURT:  But we'll cross that --

17           MR. MANLEY:  But let me give you some more context

18   on this call.  It's crystal clear, and if the defendant's --

19   if counsel want to come with us to our office, we'll let you

20   hear the entire call in 30 seconds.  It's crystal clear this

21   is what happens, he's talking casually to a friend, hey, how

22   are you?  Want to buy some sneakers.  What's going on on TV,

23   da-da-da.  And then he says, the friend says, hey, you know

24   there's someone who saw you outside the night of the Dowery

25   murder.  And he says, he's talking all casual.  He says,

1    what?  I'm going to kick his ass.  Where is he?  He has the

2    picture of me?  I mean, it is dramatic.  And we plan to play

3    it.  And the reason we plan to play it, because it shows his

4    state of mind.

5            THE COURT:  Sure.

6            MR. MANLEY:  He thinks that there's someone else

7    out there who has his picture the night of the murder, and

8    he is pissed.  And says -- he's going to cause harm to this

9    person, not just --

10           THE COURT:  Okay.  Okay.

11           MR. MANLEY:  -- oh, tell him he shall not do that.

12   I mean, it's serious and it's going to be a major part of

13   our case.

14           MR. BROWN:  My concern, Your Honor, is by bringing

15   into this case that there is a photo out there --

16           THE COURT:  Oh, no, no, no, if there is no photo,

17   I will instruct the jury there is no evidence there was a

18   photo.  But if he thinks there was a photo and responds that

19   way.  That itself is material.  Okay.  Anything else?

20           MR. MANLEY:  No, Your Honor.

21           THE COURT:  See you all at 11:30 Wednesday.

22   Looking forward to it.

23           (The proceedings were concluded.)
             I, Christine Asif, RPR, CRR, do hereby certify
24   that the foregoing is a correct transcript from the
     stenographic record of proceedings in the above-entitled
25   matter.  _____/s/_____
           Christine T. Asif, Official Court Reporter

< Dates >
may. 13:10.
.
.
< 1 >.
1 2:19, 15:9.
1. 2:13, 2:18,
  15:9.
10 4:13.
10. 9:9, 12:9.
109 15:17.
11:30 22:21.
11th 1:9.
12. 16:3.
124 15:18.
13 12:9.
13. 12:11.
14 12:9.
15. 12:13.
17 12:13.
176 9:23.
19 4:8.
19. 4:6.
190 6:25.
190. 6:25.
1999 4:4, 4:6.
.
.
< 2 >.
20 4:8.
20. 4:6.
2000 4:5.
2000. 4:4.
2009 1:9.
254 12:8.
275 12:9.
29 3:22, 4:24,
  8:17, 9:19.
29-year-olds
  8:23.
29. 9:14.
.
.
< 3 >.
30 21:20.
323 7:19, 7:21,
  7:22, 7:23,
  7:24, 7:25, 8:1,
  12:12, 15:9,
  15:13, 15:17.

323. 7:25.
34 8:23.
34. 9:19.
36 9:19.
363 12:10.
37 8:22, 9:22.
376 12:10.
384 12:11.
.
.
< 4 >.
40 8:22.
403 19:18, 19:20,
  20:15, 20:18.
403. 20:16,
  20:17.
406 15:18.
422. 15:18.
43 8:22, 9:23.
434 7:12, 7:14,
  15:12.
47 15:17.
49 8:22, 8:23.
4:30 11:25,
  12:2.
4th 18:2.
.
.
< 5 >.
5 9:21.
5. 4:13, 12:12.
52 8:22.
5:00 11:25.
5:00. 12:2.
.
.
< 6 >.
6 3:21, 4:13,
  5:20, 8:20,
  10:19, 14:15.
6. 8:15, 12:10.
61 8:22.
67 8:22.
.
.
< 7 >.
7 9:7.
70. 8:23.
.
.

< 8 >.
8 9:7.
.
.
< 9 >.
9 4:13, 9:9,
  12:11.
_____/s/_____
  _____
  22:27.
.
.
< A >.
able 14:16,
  20:4.
above-entitled
  1:12, 22:26.
absolutely
  14:18.
academic 2:18.
accepted 6:14,
  11:12.
according 14:3.
activity 5:12.
actually 3:25,
  4:12, 17:12.
add 16:12.
added 15:22.
addicted 5:12.
addiction 5:4,
  5:6.
additional 3:8,
  15:20.
address 17:12.
admissible 18:4.
adults 12:12.
advance 8:11.
African 3:21, 8:8,
  9:11, 15:9.
afterwards
  16:23.
age 4:13, 8:17,
  9:1, 9:14, 9:23,
  9:24, 10:5,
  12:10, 12:11.
ages 8:22.
alibi 18:25, 19:2,
  19:5, 19:6,
  19:9.
allegation 3:16.

allegedly 19:6.
alleging 18:24.
allowed 18:5.
almost 5:11.
already 2:10,
    15:3, 15:14,
    15:16, 15:17,
    15:24.
alternate 2:10,
    2:13, 2:18,
    2:19, 15:8,
    16:3.
alternates 3:8,
    3:9, 15:5,
    15:10, 15:13,
    16:1, 16:4,
    16:18, 16:23.
Amendment 18:2.
American 3:21,
    8:8, 15:9.
Americans 9:11.
animus 6:19.
answer 13:12.
answered 14:7.
anybody 16:24,
    17:2.
apart 9:22.
apologize 9:13,
    11:10.
apology 11:12.
apparently 14:1.
appellate 14:16.
Archangelo
    Tuminelli
    1:27.
argue 18:10.
around 9:6, 9:9,
    10:20.
arrangements
    13:12.
arrested 7:2.
article 2:24.
Asian 9:8, 9:11,
    9:12.
aside 13:22.
Asif 1:42, 22:24,
    22:28.
ass 22:1.
assault 4:2, 5:20,
    5:22, 5:25, 6:4,

7:4, 13:13,
    13:18.
assaulted 6:7.
assume 8:5.
assuming 16:12.
assure 8:7.
attack 10:25,
    11:11.
attacks 11:2,
    11:6, 11:9.
AUSA 1:23.
AUSA 1:22.
available 2:15.
away 11:9.
.
.
< B >.
baby 12:18, 19:12,
    19:24, 20:8.
back 19:17.
background 9:5,
    10:5.
Baltimore 1:8,
    7:7.
basically 7:20.
Batson 2:3, 2:6,
    3:5, 3:13,
    3:16.
behalf 2:4.
believable 20:1.
believe 3:17,
    6:19, 10:7,
    19:12.
believed 4:11.
believes 21:7.
beneficial 8:6.
better 19:6.
big 6:2, 6:8.
birth 4:6.
bit 4:7, 9:5.
black 7:19, 7:22,
    7:23, 8:2, 8:6,
    8:8, 9:10.
bottom 5:14.
bring 2:8, 3:8,
    17:1, 21:9.
bringing 22:14.
brother 7:1,
    7:25.
Brown 1:38.

business 8:12.
buy 5:11, 21:22.
.
.
< C >.
C. 1:38.
calculation 4:5.
call 2:15, 2:25,
    17:19, 17:21,
    17:25, 18:9,
    18:15, 18:16,
    19:22, 19:23,
    20:5, 20:6,
    20:12, 20:13,
    20:18, 20:20,
    20:22, 20:23,
    20:24, 21:18,
    21:20.
calls 17:22,
    17:23, 18:1,
    18:3, 18:6,
    18:7, 18:11,
    18:25, 19:3,
    19:22, 20:10.
card 6:2, 6:8.
cards 6:9.
care 4:14, 11:24,
    12:25.
case 1:12, 3:2,
    5:1, 6:5, 6:6,
    6:11, 11:6,
    11:8, 11:9,
    18:5, 18:11,
    20:10, 22:13,
    22:15.
cases 5:12, 6:3,
    6:4.
casual 21:25.
casually 21:21.
cause 6:15, 12:17,
    22:8.
caused 12:22.
causes 21:12.
CDS 7:25.
certify 22:24.
challenge 3:16,
    4:18.
challenging
    18:1.
chance 11:17.

changed 14:4.
changing 16:22.
charge 4:2, 4:3,
   6:16, 13:13,
   13:18.
charged 5:19,
   5:22, 5:24,
   6:12.
charges 5:22,
   7:4.
child 4:14, 12:10,
   12:19, 12:25,
   19:14.
childhood 3:25,
   5:9.
children 4:11,
   4:12, 4:14,
   12:3, 12:8,
   12:9, 12:10,
   12:11.
Christine 1:42,
   22:24, 22:28.
circumstance
   12:21.
City 6:3, 7:7.
clarify 3:8.
class 9:18.
clean 8:2, 14:20,
   14:22.
clear 21:18,
   21:20.
clearly 17:23,
   20:13.
clerk 14:23.
closer 9:23.
color 9:7.
commissioner 6:14,
   14:25, 15:1,
   17:3.
common 19:13.
compare 7:21.
complete 17:20,
   18:8, 20:14.
completeness
   17:18.
concern 4:13,
   18:20, 22:14.
concerned 19:11,
   19:14.
concerns 20:21.

concluded 4:15.
concluded.
   22:23.
confession 18:4.
consciousness
   20:5.
consecutively
   4:9.
consistent 7:23.
context 19:1,
   21:17.
contrast 9:21.
convicted 7:13.
copy 14:21,
   14:22.
correct 22:25.
counsel 19:22,
   21:19.
count 6:25,
   15:12.
County 7:14.
couple 2:16.
course 6:6.
cover 19:17.
create 19:6.
crime 21:1.
CRIMINAL 1:5.
criminal 5:12,
   5:21.
critical 19:1.
cross 21:16.
CRR 1:42, 22:24.
crystal 21:18,
   21:20.
cut 8:2, 10:23.
.
.
.
< D >.
da-da-da 21:23.
Darron 1:35.
date 2:8, 4:7.
daughter 12:18,
   12:19.
day 10:13, 10:17,
   12:4, 15:4,
   16:22, 17:6.
dead 4:9.
deal 20:21.
Debra 1:23.
Defendant 1:9,

   1:25, 1:30,
   1:35, 21:18.
defendants 8:7,
   8:9, 9:17,
   10:5.
defense 5:17,
   5:23, 6:18,
   6:21, 11:8.
denied 14:12.
Department 7:7.
deputy 7:6,
   7:11.
different 7:3,
   19:7, 19:15.
differentiate
   12:13.
differentiating
   14:6.
differently
   5:23.
difficult 20:19.
Dinkins 1:30, 2:4,
   3:13, 9:19,
   9:21, 9:22,
   9:24.
discharged 13:24,
   14:4.
discrimination
   3:17.
discuss 2:5, 2:19,
   14:12.
discussed 2:6,
   20:25.
discussion 4:15,
   17:17.
disparity 9:24.
distant 3:23.
District 1:1, 1:2,
   1:14.
DIVISION 1:3.
doable 13:12.
domestic 5:25,
   6:5, 6:6, 7:2.
done 16:19.
Dowery 21:24.
down 12:7.
dozen 4:22.
dramatic 22:2.
dropped 4:3, 5:23,
   6:4, 6:11,

13:18.
drug 5:1, 5:4,
  5:5, 5:6.
drugs 3:24, 4:25,
  5:4, 5:9, 5:10,
  5:11, 5:13,
  7:3.
during 11:6,
  12:15, 12:23.
Dwyer 1:23, 4:21,
  4:25.
.
.
< E >.
earlier 20:10.
effect 21:9.
eight 9:11.
either 13:8,
  17:3.
end 3:9, 15:22.
engage 5:12.
engaged 3:16.
enough 19:15.
entire 3:25, 4:25,
  20:5, 20:6,
  20:13, 21:20.
Esquire 1:27,
  1:28, 1:32,
  1:33, 1:37,
  1:38.
event 7:1.
everybody 15:19,
  20:7.
everything
  13:22.
evidence 12:4,
  21:8, 22:17.
ex-husband 7:13.
exact 5:8.
exactly 16:21.
examined 11:21.
example 18:12.
excluded 20:12.
excused 12:17.
exercise 11:23.
experiences
  10:7.
explain 5:2.
expressed 4:13.
expresses 21:2.

extremely 18:12,
  20:19, 21:4.
.
.
< F >.
fact 3:22, 5:19,
  6:10, 7:10.
facto 13:21.
factor 7:5.
facts 2:5, 3:19.
fall 10:14.
falsely 6:12.
family 6:23, 7:8,
  12:21.
fate 10:8.
father 3:23, 3:24,
  4:2, 4:25, 5:9,
  7:3.
favorable 7:9,
  7:18, 8:4.
favorably 8:13.
favorite 8:2.
fed 11:5.
felt 19:2.
female 6:25, 7:6,
  7:13.
females 9:8, 9:10,
  9:11, 9:12.
filed 2:3, 6:13,
  11:16, 17:14,
  17:17.
fine 9:2, 16:25,
  17:13, 17:19,
  17:25.
finished 12:1,
  12:2.
First 3:15, 6:24,
  9:6, 9:15,
  10:16, 10:17,
  13:9, 20:19.
five 9:20, 15:12,
  16:4, 16:10,
  16:12, 16:20.
fixing 18:25.
flushed 12:22.
focus 18:13.
focused 12:16,
  20:18.
foregoing 22:25.
forgot 14:4.

formally 2:2.
forth 3:5.
Fortunately
  12:1.
forward 22:22.
four 4:12, 12:12,
  15:12, 16:10.
four. 16:14.
frankly 6:9.
Friday 10:16.
friend 21:21,
  21:23.
friends 4:4, 4:8,
  7:4.
frivolous 14:11.
frustration
  21:2.
full 10:7.
.
.
< G >.
gallbladder
  2:11.
game 16:22.
gangs 7:15, 7:17,
  14:7, 14:8.
Gary 1:32.
getting 11:5,
  18:21.
Gilbert 1:25,
  9:19, 9:20,
  9:23.
give 8:22, 10:21,
  15:19, 21:15,
  21:17.
given 7:10.
Goods 1:35, 17:15,
  18:25, 19:22,
  19:23, 21:1.
gotten 14:4.
Government 1:20.
Government 4:17,
  6:9, 6:19, 6:20,
  7:8, 7:10, 7:18,
  7:21, 8:4, 9:7,
  9:9, 9:14,
  10:13, 10:14,
  11:8, 13:13,
  14:6, 16:13,
  18:3, 18:24,

19:19, 20:23,
   21:7.
grandfather
   12:17.
great 6:20.
grounds 18:2.
guess 3:4.
guilt 21:3.
.
.
< H >.
handgun 7:14.
hands 10:8.
happen 2:13,
   9:17.
happened 13:14,
   13:15.
happens 21:21.
hardship 4:11,
   4:16, 11:20,
   11:23, 12:6.
harm 22:8.
hear 13:7, 19:19,
   21:20.
heard 10:3,
   10:17.
hearing 2:7,
   21:1.
hereby 22:24.
Hispanic 9:8,
   9:12.
hitting 6:1.
hold 10:7.
homeland 14:2.
Honor 4:5, 4:10,
   4:12, 4:15, 8:1,
   8:14, 8:21,
   8:24, 14:20,
   15:11, 16:25,
   17:1, 17:21,
   18:10, 18:15,
   18:20, 19:7,
   20:9, 20:18,
   22:14, 22:20.
Honorable 1:14,
   14:2.
honorably 13:23,
   14:3.
hope 16:23,
   20:6.

hopefully 12:2.
Hoven 1:28.
husband 4:2, 5:19,
   5:22, 5:24, 6:7,
   7:4, 13:17,
   13:23.
.
.
< I >.
idea 5:5, 6:1.
identify 8:9,
   10:4.
impartial 7:16.
important 3:21,
   7:5, 11:8.
in. 18:15, 18:16,
   20:13.
include 17:18,
   17:21.
including 17:24.
inconsistencies
   10:18.
indicated 7:1.
indictment 6:13.
individuals
   8:13.
information
   5:14.
institution
   17:22.
instruct 22:17.
instruction
   21:13.
interesting
   7:20.
involved 3:24,
   4:25, 5:4, 5:7,
   5:25, 7:3.
ipso 13:21.
Ironically 2:13.
issue 4:23, 15:3,
   17:1, 18:17,
   18:18, 19:18,
   19:20, 20:18,
   20:21, 21:5.
issues 10:24.
itself 22:19.
.
.
< J >.

J. 1:37.
J. Frederick Motz
   1:14.
James 1:30.
JAMES DINKINS, et
   al. 1:8.
JFM-06-0309 1:6.
job 5:20, 5:21,
   6:6, 6:10.
Jonathan 1:28.
Joseph 1:33.
Journal 8:3,
   8:11.
Judge 1:14, 3:7,
   3:12, 9:4, 9:15,
   10:12, 11:13,
   11:19, 12:7,
   12:13, 13:24,
   14:5, 14:14,
   16:7, 17:11,
   17:13, 21:15.
judgment 10:2.
Juror 3:21, 4:10,
   5:20, 8:15,
   9:21, 9:23,
   10:19, 11:20,
   12:3, 12:8,
   12:9, 12:10,
   12:11, 12:12,
   13:7, 14:15,
   15:3, 15:7.
jurors 2:25,
   12:25, 14:7,
   14:15, 16:9,
   16:10.
jury 8:6, 8:21,
   9:6, 9:16,
   10:20, 12:14,
   12:16, 12:23,
   14:14, 14:25,
   15:1, 17:2,
   22:17.
justice 5:21.
Justin 1:38.
.
.
< K >.
kick 22:1.
kids 12:12.
kind 21:6.

knowledge 19:13.
known 16:19.
knows 2:9.
Kwame Manley
  1:22.
.
.
< L >.
last 2:6, 2:17.
lastly 14:5.
late 2:22.
later 10:17,
  14:16.
leave 11:25.
left 15:10,
  16:13.
lie 20:11.
life 3:25, 4:25,
  10:7.
light 2:4.
likelihood 6:20.
line 5:14.
little 4:7, 9:5.
location 19:4.
long 4:15,
  15:21.
look 5:18, 5:23,
  5:24, 6:22,
  6:24, 8:12.
looked 4:23.
Looking 22:22.
lose 16:24.
lost 2:10, 4:3,
  4:8, 15:3.
lot 6:3, 8:7,
  14:2.
lying 20:8.
.
.
< M >.
mad 7:24.
magazine 8:11.
major 22:12.
male 7:1, 7:19,
  7:22, 7:23, 8:2,
  9:8, 15:9.
males 9:12.
MANLEY 3:6, 12:5,
  22:11.
married 7:6,

7:10.
Maryland 1:2,
  1:8.
material 22:19.
matter 22:27.
mature 10:1.
MBA 7:8.
mean 6:11, 12:19,
  13:19, 18:18,
  22:2, 22:12.
meaning 5:20.
means 6:12,
  9:20.
meant 11:10,
  11:13.
Melvin 1:25.
members 6:23,
  7:8.
mention 7:12.
mentioned 8:16,
  10:15, 12:22.
mentions 13:13.
merit 3:18.
military 13:24.
Miller-el 10:13.
mind 17:2, 22:4.
moment 20:17.
Monday 11:14,
  11:15, 11:18.
money 5:13,
  8:11.
monitored 17:23.
mooted 15:7.
morning 2:2,
  10:17, 11:14,
  11:15, 11:18.
mother 3:23, 3:24,
  4:1, 4:24, 5:8,
  7:3, 11:24,
  19:12, 19:13,
  19:24, 20:8.
motion 2:3, 2:5,
  2:6, 3:13,
  11:16, 14:11,
  14:12, 17:14,
  17:17, 20:24.
move 11:19.
MR. BROWN 18:1,
  18:10, 18:20,
  18:24, 19:11,

20:17, 22:14.
MR. MANLEY 3:12,
  4:20, 5:5, 5:8,
  8:19, 10:6,
  14:23, 15:1,
  15:11, 15:16,
  16:1, 16:25,
  17:8, 17:11,
  17:16, 18:14,
  18:18, 19:21,
  20:16, 21:15,
  21:17, 22:6,
  22:20.
MR. PROCTOR 9:4,
  10:3, 10:12,
  11:4, 11:10,
  11:13, 11:19,
  12:5, 12:24,
  13:7, 13:11,
  13:20, 13:23,
  14:5, 14:20,
  15:21, 15:25,
  16:2, 16:12,
  16:18, 17:9.
MR. TUMINELLI 3:7,
  16:6, 16:9.
Ms 4:21, 4:25.
murder 19:25,
  21:25, 22:7.
murdered 4:4, 4:9,
  7:4.
Murtha 1:33.
mystery 20:24.
.
.
< N >.
need 17:12.
needs 12:19.
neighbor 3:24.
neighborhood
  13:25.
neutral 5:18,
  8:15, 10:15.
new 2:6.
newspaper 2:23,
  2:24, 3:2, 8:3,
  17:4.
next 6:21.
nice 8:2.
night 21:24,

22:7.
No. 1:5, 2:13,
  2:18, 2:19,
  6:25, 7:14,
  8:15, 8:20,
  9:21, 9:23,
  10:19, 12:8,
  12:9, 12:10,
  12:11, 12:12,
  14:15, 15:9,
  17:8.
nol 6:4.
None 10:15,
  12:25.
normal 5:1.
NORTHERN 1:3.
note 4:5, 4:17,
  7:20, 8:1,
  17:22.
noted 7:19.
notes 10:25,
  11:20.
nothing 13:6.
number 3:14, 3:18,
  5:15, 8:24,
  8:25.
.
.
< O >.
Obviously 3:15,
  4:6, 18:2,
  20:10.
occurs 10:16.
offense 8:1.
offer 21:8.
offered 3:19.
office 4:22, 5:15,
  21:19.
officer 6:16.
Official 1:44,
  22:28.
Okay 3:11, 11:19,
  17:10, 17:14,
  18:13, 18:24,
  22:10, 22:19.
old 3:22, 8:17,
  9:20.
once 12:6.
One 2:10, 2:12,
  2:15, 5:24,

8:10, 9:7, 9:8,
  9:10, 9:11,
  9:12, 9:22,
  12:10, 12:11,
  12:12, 12:13,
  14:6, 14:21,
  15:12, 16:3,
  16:9, 16:16,
  16:18, 17:1,
  17:11, 19:11.
ones 12:21.
open 17:24.
operation 2:11.
order 15:13.
ought 2:19.
outline 3:18.
outside 21:24.
.
.
< P >.
papers 17:7.
part 14:15, 14:17,
  20:9, 22:12.
particularly 5:17,
  7:10.
parts 17:19,
  17:20, 17:24,
  18:3, 18:6,
  18:11.
People 2:14, 5:12,
  5:15, 6:22,
  6:23, 6:24, 8:6,
  8:8, 8:17, 8:25,
  9:7, 9:16, 10:1,
  10:4, 10:6,
  10:9, 10:19,
  11:1, 12:14,
  12:16, 14:2,
  14:3, 15:17,
  15:22, 17:3,
  17:5, 20:11.
peremptory 4:18,
  11:23.
perhaps 19:12.
person 6:24, 7:12,
  8:1, 8:20, 8:21,
  19:4, 20:3,
  20:4, 22:9.
personal 11:2,
  11:6, 11:9,

11:11.
perspective
  18:7.
phone 20:18,
  20:20, 20:22,
  20:23.
photo 20:24, 21:1,
  22:15, 22:16,
  22:18.
photograph 21:6,
  21:8, 21:12,
  21:14.
pick 9:6, 16:4.
picked 2:25.
picking 4:14,
  15:4.
picture 22:2,
  22:7.
pissed 22:8.
place 19:25.
Plaintiff 1:6.
plan 22:2, 22:3.
play 20:6, 20:13,
  22:2, 22:3.
playing 17:19.
Please 11:12.
point 8:14,
  11:14.
pointed 10:18.
points 3:14.
Police 6:15,
  7:7.
position 15:6.
positive 6:17.
possibility
  15:4.
possible 20:14.
potential 11:22,
  15:13, 19:3.
practical 15:3.
predicted 2:9.
prejudicial 18:12,
  21:4, 21:5.
present 12:6.
pretextual 14:8.
previously 3:19.
private 12:8.
probable 6:15.
probative 21:3.
problem 6:20,

12:22, 13:5,
13:8, 13:9,
15:8, 16:21,
21:9, 21:12.
problems 6:23,
15:22.
proceedings 22:23,
22:26.
process 12:16,
12:23.
Proctor 1:32,
2:17, 3:4, 5:17,
9:3, 13:3,
14:13, 15:6.
prosecutor 6:13.
prosecutors
4:22.
prossed 6:4.
protection 9:18.
provide 14:21.
purporting
20:23.
purposeful 3:17.
puts 18:7.
.
.
< Q >.
quarrelling
14:13.
quarterbacking
11:14, 11:16,
11:18.
questionnaire
2:22.
questionnaires
14:14.
.
.
< R >.
race 5:18, 8:14,
10:15.
raise 10:24.
raised 15:3.
raises 21:5.
re-ask 2:14.
read 2:23, 3:1,
17:4.
reads 8:10.
real 20:21.
reason 5:2, 11:3,

14:9, 22:3.
reasons 3:5, 3:18,
5:19, 8:15,
10:15, 11:4.
reassembled
14:11.
recall 9:5, 12:15,
12:20, 13:10.
received 3:12.
recollection
5:3.
reconsider 2:3,
3:13.
record 14:15,
14:18, 22:26.
recorded 17:22,
17:24.
referring 19:23.
reflection
14:10.
refresh 5:3.
relative 3:23,
18:5.
relevance 21:13.
relevant 18:11.
reliable 19:5.
relied 2:5.
remaining 14:15.
remember 2:9,
2:21, 12:17.
remembered 2:11.
remembers 20:9.
remind 2:25,
17:3.
reminds 6:3.
repeated 19:2.
Reporter 1:44,
22:28.
requested 4:17.
requires 16:6.
respond 3:6,
3:14.
responded 11:17.
responds 22:18.
response 5:18,
7:21.
restraint 12:1.
reversed 9:10.
rid 2:18.
RPR 1:42, 22:24.

Rule 16:5, 16:6,
17:18.
rules 16:22.
ruling 14:14.
run 14:1.
running 13:25.
.
.
< S >.
Saunders 1:37.
saw 21:24.
saying 7:21, 9:16,
10:10, 14:8,
18:2, 19:8,
19:16.
says 6:18, 7:13,
17:23, 19:23,
20:22, 20:23,
21:23, 21:25,
22:8.
scene 21:1.
school 4:14,
12:8.
scratched 10:20.
sealed 14:19.
Second 9:9, 9:18,
13:17.
seconds 21:20.
security 14:2.
selected 15:15,
15:16.
selection 12:16,
12:23.
selling 5:11,
7:13.
serious 11:9,
22:12.
seriously 3:15.
serving 12:14.
set 3:4.
sets 19:22.
seven 9:20.
several 9:15.
shall 22:11.
sheriff 7:6, 7:7,
7:11.
shooting 6:1.
shot 4:9.
shouldn't 6:12,
6:17, 14:11.

shows 22:3.
side 9:24.
significance
   4:1.
significant 4:8,
   4:11, 8:19,
   10:12, 12:24,
   13:16.
similar 10:5.
simple 15:5.
sir 15:25, 16:18,
   17:9.
sit 2:16.
situations 13:1.
six 9:10, 15:12,
   16:10.
sneakers 21:22.
somebody 15:23,
   16:16.
someone 3:23, 6:1,
   8:10, 10:8,
   13:24, 16:3,
   19:8, 19:13,
   19:16, 21:24,
   22:6.
sometime 2:12.
Sometimes 8:5,
   17:5.
sorry 4:12,
   9:12.
special 12:19.
specter 21:10.
stand 10:14.
start 3:4,
   16:20.
started 4:20.
state 11:3,
   22:4.
statement 6:14,
   7:15, 17:15.
States 1:1,
   1:14.
stay 11:9.
stenographic
   22:26.
stetted 6:4.
stop 5:15.
stream 20:5.
Street 8:3,
   8:10.

strike 4:16, 4:24,
   15:20, 15:21,
   15:23, 16:2,
   16:9, 16:13,
   16:15.
strikes 2:17,
   16:5, 16:10,
   16:11.
striking 7:25,
   8:15.
strong 21:2.
struck 7:22, 7:24,
   8:23, 8:24,
   8:25, 9:7.
stuff 20:12.
sudden 2:10.
suggests 6:18.
suit 8:2.
Sunday 17:7.
supplement 18:6.
Suppose 16:4.
suppressed 20:9.
system 5:21.
.
.
< T >.
T. 1:42, 22:28.
talked 4:21,
   5:14.
talks 9:14,
   10:14.
teen 4:3.
terrorists 14:3.
they'll 10:21.
thinking 12:3,
   20:2.
thinks 3:5, 18:4,
   21:11, 22:6,
   22:18.
Thomas 1:37.
Three 2:17, 3:2,
   4:11, 6:5, 8:13,
   9:22, 12:9,
   12:10, 15:12,
   15:16, 16:10,
   16:23.
throughout 19:2.
Thursday 10:16.
took 10:13.
total 9:9.

totally 12:20.
toward 6:19.
transcript
   22:25.
treated 11:14,
   13:19.
treatment 10:19.
trial 1:12, 17:6,
   21:10.
trials 17:5.
tried 9:6.
trouble 7:15,
   7:16, 7:17,
   11:7, 14:7,
   14:8.
troubles 9:15.
trying 7:23, 8:11,
   19:6, 20:11,
   20:21.
TUMINELLI 3:11.
TV 21:22.
twice 9:6.
Two 2:16, 3:8,
   4:3, 4:8, 6:3,
   7:4, 12:8,
   12:11, 12:12,
   15:4, 15:12,
   16:8, 16:9,
   16:10, 19:22.
.
.
< U >.
understand 10:2,
   19:10, 20:20.
understanding
   8:24.
understood 10:10,
   15:6.
unemployed 3:22,
   4:24.
unfairly 21:4.
United 1:1,
   1:14.
UNITED STATES OF
   AMERICA 1:5.
using 5:6, 5:10.
usual 15:5.
.
.
< V >.

Van 1:28.
victim 6:7.
violation 3:5.
violence 7:2.
vis-a-vis 10:19.
vs 1:7.
.
.
< W >.
wait 13:17.
Wall 8:3, 8:10.
wanted 2:17.
wants 19:24.
Wednesday 2:24,
   22:21.
week 2:17, 10:21,
   11:1.
weeks 2:16.
whatever 17:20.
whether 2:14,
   2:15, 5:5, 5:9,
   11:7, 13:14,
   18:4, 18:5.
white 6:25, 7:1,
   7:5, 7:12.
whoever 11:6,
   15:9.
whole 5:9, 17:19,
   18:15, 18:16,
   20:5.
wholly 3:17.
Wicomico 7:14.
wild 6:2, 6:8,
   6:9.
will 2:15, 3:8,
   9:5, 14:16,
   14:18, 17:23,
   19:14, 22:17.
within 8:12.
Without 3:18,
   18:21, 21:3,
   21:4.
witness 20:7.
word 5:7.
words 5:8, 21:2.
work 17:20,
   18:16.
workable 13:13.
worked 12:7,
   18:14.

world 8:12.
worried 19:19,
   19:25, 20:1,
   20:6.
worthy 9:18.
write 17:5.
written 11:16.
wrote 11:20,
   12:7.
.
.
< Y >.
year 9:22.
years 3:22, 9:19,
   9:20, 9:21,
   9:22.
young 8:24, 8:25,
   9:16, 9:17,
   10:1, 10:4,
   10:6, 10:8.
younger 9:1, 9:20,
   9:21.
youngest 8:20,
   8:21.